STATE OF MAINE
PENOBSCOT, SS.



SUPERIOR COURT
Docket No. CV-00-130
AMM-PEN-4/17/2002

JOHNNIE SHOWERS,
        Plaintiff

v.

BANGOR HYDRO-ELECTRIC CO,
        Defendant.

)
)
)
)
)
)
)
)

**ORDER ON MOTIONS
FOR SUMMARY JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

APR 29 2003

<u>Plaintiff's Motion for Partial Summary Judgment</u>

(Count VII)

    Plaintiff moves for partial summary judgment on Count VII of his Complaint - a "stand-alone" claim predicated upon 35-A MRSA § 1501.[1] He asserts that the Defendant does not controvert the facts pertinent to Count VII and that the facts entitle him to judgment as a matter of law. [Note: all references to the Plaintiff's Complaint herein are references to his First Amended Complaint.]

    The parties' submissions to this court have adequately developed the facts. The Seaward Construction Company employed the Plaintiff as an electrical lineman. At the time of the Plaintiff's injuries, Seaward had entered into a contract with the Defendant for the rebuilding of transmission lines that had been damaged in an ice storm. The contract included provisions whereby the Defendant expressly reserved the authority to intervene in the building process or to overrule Seaward's on-site supervisors regarding safety issues. See Exhibit 4 to Plaintiff's Motion for Partial Summary Judgment. The Defendant duly designated one of its employees to serve in this capacity at the work sites.

    Seaward utilized a procedure for installing copper and steel "down ground" lines onto utility poles which involved hoisting the cables into position after the utility poles were set in place. Seward used this procedure regardless of whether or not the wires on the poles were energized or not. The Defendant's on-site agents were well aware of this procedure. On the date in question, the upper end of a down ground cable broke free during the hoisting process and dropped onto an energized phase wire. This exposed the Plaintiff, who was on the ground below holding the other end of the cable, to extremely high electrical voltage. He suffered significant injuries.

    At the crux of the parties' dispute is the method of installing the down ground lines. The Plaintiff argues that the Defendant's method lacks due care and is otherwise prohibited by law. He suggests that the down ground lines should be installed while the utility poles are still on the ground. Defendant urges that Seaward's practices are appropriate and are widely used in the industry without adverse consequence.

    In the pending Motion for Partial Summary Judgment, Plaintiff submits that the facts entitle him to judgment as a matter of law. In his <u>Memorandum</u>, he suggests that 35-A MRSA § 1501

---

[1] Section 1501 of Title 35-A provides:

If a public utility violates this Title, causes or permits a violation of this Title or omits to do anything that this Title requires it to do it may be liable in damages to the person injured as a result. Recovery under this section does not affect a recovery by the State of the penalty prescribed for the violation.

creates a cause of action independent of any common law causes of action and that the uncontroverted facts justify judgment on Count VII of his Complaint in his favor.

Plaintiff further points out that 35-A MRSA § 2305-A requires public utilities to comply with the National Electrical Safety Code (NESC). He argues that Seaward's practices violate two rules of the NESC (422C1 and 443A6) that directly relate to the installation of down ground lines.

Defendant argues that 35-A MRSA §1501 does not create an independent cause of action. It argues that §1501 merely codifies and confirms common law (i.e.- the right of an injured party to bring a claim for negligence). Further, Defendant asserts that Seaward's status as an independent contractor insulates it from liability.

Contrary to Defendant's arguments, the court is satisfied that §1501 does create a "stand-alone" cause of action for individuals injured as a direct result of a public utility to comply with the requirements of Title 35-A. The court further finds that this duty is non-delegable, particularly where, as here, the public utility has expressly reserved the authority to override a contractor's on-site practices and decisions.

The issue on Plaintiff's Motion for Partial Summary Judgment thus becomes: Did the procedure utilized by Seaward constitute an act or omission in violation § 1501, which resulted in injury to the Plaintiff, as a matter of law?

From the perspective of a layperson, it appears that the practices of Seaward might well have violated Rules 422C1 and 443A6 of the National Electrical Safety Code. However, the record before the Court does not allow this conclusion as a matter of law. For instance, the rules refer to vicinity and distance, but do not define these terms. Indeed, it would be impossible to pronounce a particular measurement; the appropriate distances and vicinities can be measured established only in the particular context of the individual site and practices within the industry. Although Plaintiff offers his opinions and computations regarding "minimum approach distances", which would establish a prima facie case if accepted by the court, this court is unwilling to accept them as dispositive at this time. Where the facts and conclusions are subject to interpretation, judgment as a matter of law is inadvisable.

In this matter, the fact that a cable which the Defendant did not bond to an effective ground did come into contact with an energized conductor (thereby causing injury) does not ipso facto establish an inadequate distance or proximity. The mere fact of an injury does not create a cause of action under §1501. Stated otherwise, an electrical power utility is not an insurer for all injuries resulting from contact with its electricity. Non-compliance with the provisions of Title 35-A is the touchstone of the cause of action.

This court is unable to determine whether the Defendant violated Rules 422C1 and 443A6 (and consequently §1501) without the benefit of expert testimony regarding industry practices and the circumstances of this particular site. Accordingly, although judgment by the court as a matter of law may occur in the context of a Rule 50 motion during trial, summary judgment at this point is inappropriate and the Court must deny Plaintiff's motion.

### Defendant's Motion for Summary Judgment
### (Count I)

Defendant moves for summary judgment on Count I of Plaintiff's Complaint; a cause of action based upon a land owner's or occupier's common law obligation to invitees. Specifically, Plaintiff alleges that Defendant has breached its obligations, as reflected in sections 343 and 343A of the Restatement (Second) of Torts. These sections discuss a landowner's duty to warn or to take

not consider the mere existence of high voltage electric wires to be the "dangerous condition" in this matter (although they could be in a different factual scenario). The dangerous condition alleged in Count I is the practice of installing down ground lines on installed poles supporting energized wires. Defendant argues that it does not owe the Plaintiff a duty of care under these circumstances as a matter of law.

Defendant points out that the instant matter does not present the typical circumstances a landowner's common law duties addresses. Typically, a condition existing upon the land, unstable or slippery surfaces for instance, creates liability. The condition is usually inextricably connected to the property itself. In the pending matter, by contrast, the dangerous condition is the procedure that the injured party undertook.

Defendant offers a powerful common sense argument. If a wood lot owner contracts to have wood harvested from his lot and observes one of the woodsman felling trees in his own direction (i.e. - the woodsman has to run out from under the falling tree), does the lot owner owe a duty to the woodsman to warn him of the danger of this practice? Does the duty change if the lot owner is an experienced wood harvester? One would think not.

Coffin v. Lariat Associates, 766 A.2d 1018 (Me. 2001) supports the Defendant's argument to some degree. Plaintiff suggests that the Coffin case is off point because the Court predicated the decision upon the issue of foreseeability and the ability of the landowner to anticipate the harm. Notably, the Law Court suggests that the unique facts of each case drives the analysis. This court does not deem Coffin to establish a strict liability rule holding landowners liable for injuries occurring upon their property; neither does it absolve landowners of responsibility even if the danger was open and apparent.

Plaintiff cites Williams v. Boise Cascade, 507 A.2d 576 (Me. 1986) in opposition to Defendant's argument. However, as noted above, the condition that caused injury in the Williams case (a slippery floor) was not the result of the injured party's activities. He was aware of the condition, but he played no part in its creation. Although the Law Court remanded on an erroneous instruction, the case does not address the duty or standard of care that a landowner must undertake when he becomes aware of an unsafe practice or activity an invitee undertakes on the owner's land that involves an unreasonable risk of harm to that invitee.[2]

Although the court is receptive to the Defendant's argument from a common sense and public policy point of view, it cannot say that judgment for the Defendant on Count I is appropriate as a matter of law. Maine has not yet decided the narrow issue of law, and this court is unable to discern the likely decision of the Law Court based upon past holdings. The better practice is to allow the matter to go to the jury upon a verdict form that will preserve the issues carefully for appellate review. Accordingly, the Defendant's motion for summary judgment on Count I is denied.

---

[2] Grover v. Boise Cascade Corp., 2003 ME 45 (April 2, 2003), touches upon the issue of a claimant's own role in causing his injuries (the Plaintiff erroneously assumed that a safety gate was latched), but still does not address the situation where an arguably unreasonably dangerous condition is a practice undertaken by a person who is aware of the danger created by the activity undertaken in proximity to a particular condition on the land.

## Counts II-VI

The parties agree that Seaward was an independent contractor pursuant to the terms of its contract with the Defendant at all times relevant hereto. As such, Defendant would not ordinarily be responsible for any negligence upon the part of the independent contractor that resulted in injury to third persons. Counts II-VI of the Plaintiff's Complaint allege causes of action that the independent contract theory would otherwise be bar. However, the Restatement of Torts offers an exception to the independent contractor doctrine which would allow the Plaintiff to proceed with his claims.[3] Each section provides an avenue for recovery from the principal as a result of injury "...to others..." The parties have comprehensively reviewed the legal landscape on this subject. The Law Court has not been fully and authoritatively established the law in Maine and there exists a split of authority from other jurisdictions.

Regarding the definition and scope of the word "...others..." as used in the Restatement, this court is satisfied that the Plaintiff falls within its purview. This court concludes that the term "...independent contractor..." applies specifically to the corporation or individual who contracts with the principal. Every other person or entity, including employees and further independent contractors, fall into the category of "...others..." for the purpose of the Restatement provisions noted above.

Particular elements of the Restatement exceptions raise several further issues (See footnote 3, supra.). Section 414 establishes an exception to the independent contractor rule where the principal has retained control of any part of the work to be done under the contract. Defendant correctly points out that the contract contains fairly unremarkable provisions whereby the Defendant requires compliance with safety standards and contractual provisions and allows the Defendant to step in and stop work if Seaboard fails to comply. The drafters of these provisions may have assumed that they would limit, not augment, the principal's liability. Further, some provisions relate to the necessary practices of de-energizing the lines and "tagging" the poles, (practices which the Defendant must undertake during the repair and construction process).

The record is devoid of any actual intervention by the Defendant regarding the method of installing down grounds. Indeed, the record is devoid of any intervention at all by the Defendant in Seaward's practices and work methods. The court cannot find, on this record, that the Defendant ever actually undertook to affirmatively exercise control over work methods or operative details of Seaboard's work despite its limited authority to do so under the terms of the contract. Upon this circumstance, Defendant argues that Section 414 does not apply. Defendant plausibly argues that the Plaintiff's reading of Section 414 renders the Defendant a virtual insurer of every act or omission by the independent contractor - if the independent contractor negligently injures a third person, the principal would always be subject to after-the-fact scrutiny and liability. In other words, if a principal contractor retains any ability to overrule the independent contractor on the particulars of the work to be done, the principal may become a *de facto* insurer of the independent contractor.

Thus, the question becomes: if the property owner in a construction contract reserves the ability to stop work, and thus control the details of the work on the contract, for safety concerns, but never exercises the authority, does Section 414 still provide an exception to the independent contractor rule? After considerable deliberation, the court concludes that it does. If a principal has the authority to stop work when a dangerous condition exists, even a condition that only threatens the independent contractor's employees, and the principal negligently fails to act, the independent

---

[3] Plaintiff urges that the following exceptions apply: Section 414 (Count II), Sections 427 and 427A (Count III), Section 416 (Count IV), Section 427A (Count V), and Section 411 (Count VI).

contractor doctrine provides no defense. Stated otherwise, this court concludes that the reservation of authority in the instant contract constitutes a retention of control as provided in Section 414 as a matter of law. Accordingly, Section 414 of the Restatement is available to the Plaintiff as an exception to the independent contractor rule.

If Plaintiff is able to prove his negligence claim on Count II, and the Defendant does not prove the Plaintiff acted with equal or greater negligence, and no other defense constitutes a bar to this action, Plaintiff will recover judgment. The remaining theories alleged in Counts III,IV,V, and VI would provide Plaintiff with no additional recovery in the event of his success on Count II. By the same token, if he is unsuccessful on Count II (i.e.- the Plaintiff has failed to demonstrate negligence upon the part of the Defendant), the remainder of the counts noted above will necessarily fail. All hinge upon a finding by the jury regarding the acceptability or non-acceptability of Seaward's down ground installation practice. Accordingly, without further comment, the court construes Sections 427, 427A, and 416 of the Restatement as additional exceptions to the independent contractor rule that the Plaintiff may appropriately invoke.

Based upon the forgoing, the Court must deny the Defendant's Motion for Summary Judgment. So Ordered.

**The Clerk may incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).**

Dated: April 17, 2003

_____
JUSTICE, SUPERIOR COURT
Andrew M. Mead

JOHNNIE SHOWERS  - PLAINTIFF

Attorney for: JOHNNIE SHOWERS
KEVIN CUDDY
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

Attorney for: JOHNNIE SHOWERS
VISITING ATTORNEY
VISITING ATTORNEY
-

- -



vs
BANGOR HYDRO ELECTIC COMPANY - DEFENDANT

Attorney for: BANGOR HYDRO ELECTIC COMPANY
ALAN STONE
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

Attorney for: BANGOR HYDRO ELECTIC COMPANY
STEPHEN WADE
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2000-00130

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 06/29/2000

## Docket Events:

05/20/2002 FILING DOCUMENT - COMPLAINT FILED ON 06/29/2000

        NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 06/29/2000

05/20/2002 Party(s):  JOHNNIE SHOWERS
        ATTORNEY - RETAINED ENTERED ON 06/29/2000
        Plaintiff's Attorney: KEVIN CUDDY

05/20/2002 Party(s):  BANGOR HYDRO ELECTIC COMPANY
        ATTORNEY - RETAINED ENTERED ON 08/01/2000
        Defendant's Attorney: ALAN STONE

05/20/2002 ATTORNEY - RETAINED ENTERED ON 06/29/2000

05/20/2002 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 10/04/2001
        ANDREW M MEAD , JUSTICE

05/30/2002 Party(s):  JOHNNIE SHOWERS
        DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 05/30/2002

DONALD L. GARBRECHT
LAW LIBRARY

MAY 6 2003

STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
Docket No. CV-00-130

JOHNNIE SHOWERS, )
            Plaintiff )
                      )
                      )                    Corrected[1]
v.                    )          **ORDER ON MOTIONS**
                      )     **FOR SUMMARY JUDGMENT**
                      )
BANGOR HYDRO-ELECTRIC CO, )
            Defendant. )

FILED & ENTERED
SUPERIOR COURT

APR 28 2003

PENOBSCOT COUNTY

Plaintiff's Motion for Partial Summary Judgment

(Count VII)

Plaintiff moves for partial summary judgment on Count VII of his Complaint - a "stand-alone" claim predicated upon 35-A MRSA § 1501.[2] He asserts that the Defendant does not controvert the facts pertinent to Count VII and that the facts entitle him to judgment as a matter of law. [Note: all references to the Plaintiff's Complaint herein are references to his First Amended Complaint.]

The parties' submissions to this court have adequately developed the facts. The Seaward Construction Company employed the Plaintiff as an electrical lineman. At the time of the Plaintiff's injuries, Seaward had entered into a contract with the Defendant for the rebuilding of transmission lines that had been damaged in an ice storm. The contract included provisions whereby the Defendant expressly reserved the authority to intervene in the building process or to overrule Seaward's on-site supervisors regarding safety issues. See Exhibit 4 to Plaintiff's Motion for Partial Summary Judgment. The Defendant duly designated one of its employees to serve in this capacity at the work sites.

Seaward utilized a procedure for installing copper and steel "down ground" lines onto utility poles which involved hoisting the cables into position after the utility poles were set in place. Seward used this procedure regardless of whether or not the wires on the poles were energized or not. The Defendant's on-site agents were well aware of this procedure. On the date in question, the upper end of a down ground cable broke free during the hoisting process and dropped onto an energized phase wire. This exposed the Plaintiff, who was on the ground below holding the other end of the cable, to extremely high electrical voltage. He suffered significant injuries.

At the crux of the parties' dispute is the method of installing the down ground lines. The Plaintiff argues that the Defendant's method lacks due care and is otherwise prohibited by law. He suggests that the down ground lines should be installed while the utility poles are still on the ground. Defendant urges that Seaward's practices are appropriate and are widely used in the industry without adverse consequence.

---

[1] The corrected version of this Order adds brief additional text in the first two full sentences at the top of page 3. This text was erroneously omitted from the earlier version.
[2] Section 1501 of Title 35-A provides:

If a public utility violates this Title, causes or permits a violation of this Title or omits to do anything that this Title requires it to do it may be liable in damages to the person injured as a result. Recovery under this section does not affect a recovery by the State of the penalty prescribed for the violation.

In the pending Motion for Partial Summary Judgment, Plaintiff submits that the facts entitle him to judgment as a matter of law. In his Memorandum, he suggests that 35-A MRSA § 1501 creates a cause of action independent of any common law causes of action and that the uncontroverted facts justify judgment on Count VII of his Complaint in his favor.

Plaintiff further points out that 35-A MRSA § 2305-A requires public utilities to comply with the National Electrical Safety Code (NESC). He argues that Seaward's practices violate two rules of the NESC (422C1 and 443A6) that directly relate to the installation of down ground lines.

Defendant argues that 35-A MRSA §1501 does not create an independent cause of action. It argues that §1501 merely codifies and confirms common law (i.e.- the right of an injured party to bring a claim for negligence). Further, Defendant asserts that Seaward's status as an independent contractor insulates it from liability.

Contrary to Defendant's arguments, the court is satisfied that §1501 does create a "stand-alone" cause of action for individuals injured as a direct result of a public utility to comply with the requirements of Title 35-A. The court further finds that this duty is non-delegable, particularly where, as here, the public utility has expressly reserved the authority to override a contractor's on-site practices and decisions.

The issue on Plaintiff's Motion for Partial Summary Judgment thus becomes: Did the procedure utilized by Seaward constitute an act or omission in violation § 1501, which resulted in injury to the Plaintiff, as a matter of law?

From the perspective of a layperson, it appears that the practices of Seaward might well have violated Rules 422C1 and 443A6 of the National Electrical Safety Code. However, the record before the Court does not allow this conclusion as a matter of law. For instance, the rules refer to vicinity and distance, but do not define these terms. Indeed, it would be impossible to pronounce a particular measurement; the appropriate distances and vicinities can be measured established only in the particular context of the individual site and practices within the industry. Although Plaintiff offers his opinions and computations regarding "minimum approach distances", which would establish a prima facie case if accepted by the court, this court is unwilling to accept them as dispositive at this time. Where the facts and conclusions are subject to interpretation, judgment as a matter of law is inadvisable.

In this matter, the fact that a cable which the Defendant did not bond to an effective ground did come into contact with an energized conductor (thereby causing injury) does not ipso facto establish an inadequate distance or proximity. The mere fact of an injury does not create a cause of action under §1501. Stated otherwise, an electrical power utility is not an insurer for all injuries resulting from contact with its electricity. Non-compliance with the provisions of Title 35-A is the touchstone of the cause of action.

This court is unable to determine whether the Defendant violated Rules 422C1 and 443A6 (and consequently §1501) without the benefit of expert testimony regarding industry practices and the circumstances of this particular site. Accordingly, although judgment by the court as a matter of law may occur in the context of a Rule 50 motion during trial, summary judgment at this point is inappropriate and the Court must deny Plaintiff's motion.

### Defendant's Motion for Summary Judgment
### (Count I)

Defendant moves for summary judgment on Count I of Plaintiff's Complaint; a cause of action based upon a land owner's or occupier's common law obligation to invitees. Specifically,

Plaintiff alleges that Defendant has breached its obligations, as reflected in sections 343 and 343A of the Restatement (Second) of Torts. These sections discuss a landowner's duty to warn or to take other action where the invitee may encounter a dangerous condition upon the land. This court does not consider the mere existence of high voltage electric wires to be the "dangerous condition" in this matter (although they could be in a different factual scenario). The dangerous condition alleged in Count I is the practice of installing down ground lines on installed poles supporting energized wires. Defendant argues that it does not owe the Plaintiff a duty of care under these circumstances as a matter of law.

Defendant points out that the instant matter does not present the typical circumstances a landowner's common law duties addresses. Typically, a condition existing upon the land, unstable or slippery surfaces for instance, creates liability. The condition is usually inextricably connected to the property itself. In the pending matter, by contrast, the dangerous condition is the procedure that the injured party undertook.

Defendant offers a powerful common sense argument. If a wood lot owner contracts to have wood harvested from his lot and observes one of the woodsman felling trees in his own direction (i.e. - the woodsman has to run out from under the falling tree), does the lot owner owe a duty to the woodsman to warn him of the danger of this practice? Does the duty change if the lot owner is an experienced wood harvester? One would think not.

Coffin v. Lariat Associates, 766 A.2d 1018 (Me. 2001) supports the Defendant's argument to some degree. Plaintiff suggests that the Coffin case is off point because the Court predicated the decision upon the issue of foreseeability and the ability of the landowner to anticipate the harm. Notably, the Law Court suggests that the unique facts of each case drives the analysis. This court does not deem Coffin to establish a strict liability rule holding landowners liable for injuries occurring upon their property; neither does it absolve landowners of responsibility even if the danger was open and apparent.

Plaintiff cites Williams v. Boise Cascade, 507 A.2d 576 (Me. 1986) in opposition to Defendant's argument. However, as noted above, the condition that caused injury in the Williams case (a slippery floor) was not the result of the injured party's activities. He was aware of the condition, but he played no part in its creation. Although the Law Court remanded on an erroneous instruction, the case does not address the duty or standard of care that a landowner must undertake when he becomes aware of an unsafe practice or activity an invitee undertakes on the owner's land that involves an unreasonable risk of harm to that invitee.[3]

Although the court is receptive to the Defendant's argument from a common sense and public policy point of view, it cannot say that judgment for the Defendant on Count I is appropriate as a matter of law. Maine has not yet decided the narrow issue of law, and this court is unable to discern the likely decision of the Law Court based upon past holdings. The better practice is to allow the matter to go to the jury upon a verdict form that will preserve the issues carefully for appellate review. Accordingly, the Defendant's motion for summary judgment on Count I is denied.

---

[3] Grover v. Boise Cascade Corp., 2003 ME 45 (April 2, 2003), touches upon the issue of a claimant's own role in causing his injuries (the Plaintiff erroneously assumed that a safety gate was latched), but still does not address the situation where an arguably unreasonably dangerous condition is a practice undertaken by a person who is aware of the danger created by the activity undertaken in proximity to a particular condition on the land.

Counts II-VI

The parties agree that Seaward was an independent contractor pursuant to the terms of its contract with the Defendant at all times relevant hereto. As such, Defendant would not ordinarily be responsible for any negligence upon the part of the independent contractor that resulted in injury to third persons. Counts II-VI of the Plaintiff's Complaint allege causes of action that the independent contract theory would otherwise be bar. However, the <u>Restatement of Torts</u> offers an exception to the independent contractor doctrine which would allow the Plaintiff to proceed with his claims.[4] Each section provides an avenue for recovery from the principal as a result of injury "...to others..." The parties have comprehensively reviewed the legal landscape on this subject. The Law Court has not been fully and authoritatively established the law in Maine and there exists a split of authority from other jurisdictions.

Regarding the definition and scope of the word "...others..." as used in the <u>Restatement</u>, this court is satisfied that the Plaintiff falls within its purview. This court concludes that the term "...independent contractor..." applies specifically to the corporation or individual who contracts with the principal. Every other person or entity, including employees and further independent contractors, fall into the category of "...others..." for the purpose of the Restatement provisions noted above.

Particular elements of the Restatement exceptions raise several further issues (See footnote 3, <u>supra</u>.). Section 414 establishes an exception to the independent contractor rule where the principal has retained control of any part of the work to be done under the contract. Defendant correctly points out that the contract contains fairly unremarkable provisions whereby the Defendant requires compliance with safety standards and contractual provisions and allows the Defendant to step in and stop work if Seaboard fails to comply. The drafters of these provisions may have assumed that they would limit, not augment, the principal's liability. Further, some provisions relate to the necessary practices of de-energizing the lines and "tagging" the poles, (practices which the Defendant must undertake during the repair and construction process).

The record is devoid of any actual intervention by the Defendant regarding the method of installing down grounds. Indeed, the record is devoid of any intervention at <u>all</u> by the Defendant in Seaward's practices and work methods. The court cannot find, on this record, that the Defendant ever actually undertook to affirmatively exercise control over work methods or operative details of Seaboard's work despite its limited authority to do so under the terms of the contract. Upon this circumstance, Defendant argues that Section 414 does not apply. Defendant plausibly argues that the Plaintiff's reading of Section 414 renders the Defendant a virtual insurer of every act or omission by the independent contractor - if the independent contractor negligently injures a third person, the principal would always be subject to after-the-fact scrutiny and liability. In other words, if a principal contractor retains any ability to overrule the independent contractor on the particulars of the work to be done, the principal may become a *de facto* insurer of the independent contractor.

Thus, the question becomes: if the property owner in a construction contract reserves the ability to stop work, and thus control the details of the work on the contract, for safety concerns, but never exercises the authority, does Section 414 still provide an exception to the independent contractor rule? After considerable deliberation, the court concludes that it does. If a principal has the authority to stop work when a dangerous condition exists, even a condition that only threatens the independent contractor's employees, and the principal negligently fails to act, the independent

---

[4] Plaintiff urges that the following exceptions apply: Section 414 (Count II), Sections 427 and 427A (Count III), Section 416 (Count IV), Section 427A (Count V), and Section 411 (Count VI).

contractor doctrine provides no defense. Stated otherwise, this court concludes that the reservation of authority in the instant contract constitutes a retention of control as provided in Section 414 as a matter of law. Accordingly, Section 414 of the Restatement is available to the Plaintiff as an exception to the independent contractor rule.

If Plaintiff is able to prove his negligence claim on Count II, and the Defendant does not prove the Plaintiff acted with equal or greater negligence, and no other defense constitutes a bar to this action, Plaintiff will recover judgment. The remaining theories alleged in Counts III,IV,V, and VI would provide Plaintiff with no additional recovery in the event of his success on Count II. By the same token, if he is unsuccessful on Count II (i.e.- the Plaintiff has failed to demonstrate negligence upon the part of the Defendant), the remainder of the counts noted above will necessarily fail. All hinge upon a finding by the jury regarding the acceptability or non-acceptability of Seaward's down ground installation practice. Accordingly, without further comment, the court construes Sections 427, 427A, and 416 of the Restatement as additional exceptions to the independent contractor rule that the Plaintiff may appropriately invoke.

Based upon the forgoing, the Court must deny the Defendant's Motion for Summary Judgment. So Ordered.

**The Clerk may incorporate this Order into the docket by reference pursuant to M.R.Civ.P Rule 79 (a).**

Dated: April 17, 2003

_____
JUSTICE, SUPERIOR COURT
Andrew M. Mead

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2000-00130

DOCKET RECORD

Attorney for: JOHNNIE SHOWERS
KEVIN CUDDY
CUDDY & LANHAM
470 EVERGREEN WOODS
BANGOR ME 04401

Attorney for: JOHNNIE SHOWERS
VISITING ATTORNEY
VISITING ATTORNEY
-

- -

vs
BANGOR HYDRO ELECTIC COMPANY -- DEFENDANT

Attorney for: BANGOR HYDRO ELECTIC COMPANY
ALAN STONE
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

Attorney for: BANGOR HYDRO ELECTIC COMPANY
STEPHEN WADE
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

Filing Document: COMPLAINT                    Minor Case Type: OTHER NEGLIGENCE
Filing Date: 06/29/2000

## Docket Events:

05/20/2002 FILING DOCUMENT - COMPLAINT FILED ON 06/29/2000

      NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 06/29/2000

05/20/2002 Party(s):  JOHNNIE SHOWERS
      ATTORNEY - RETAINED ENTERED ON 06/29/2000
      Plaintiff's Attorney: KEVIN CUDDY

05/20/2002 Party(s):  BANGOR HYDRO ELECTIC COMPANY
      ATTORNEY - RETAINED ENTERED ON 08/01/2000
      Defendant's Attorney: ALAN STONE

05/20/2002 ATTORNEY - RETAINED ENTERED ON 06/29/2000

05/20/2002 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 10/04/2001
      ANDREW M MEAD , JUSTICE

05/30/2002 Party(s):  JOHNNIE SHOWERS
      DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 05/30/2002